Good morning. I'm Vitaly Kerchin, president for Duy Mai. Mr. Mai is also present in the courtroom observing. May I please the court? I would like to reserve three minutes for rebuttal, please. You'll have to help keep track of your time. I'm sorry? You'll have to help keep track of your own time. We aren't going to put it separately on the clock. Okay. So basically when this hits 12 is when I should probably stop then? It'll say three. It counts backwards. Oh, right. Fair enough. So Vitaly Kerchin, president for Mr. Duy Mai, reserving three minutes for rebuttal. The issue presented today is Mr. Mai is challenging the application of 18 U.S.C. 922 G-4 as it applies to him specifically. The G-4 prohibition is the one that relates to the possession of a firearm by an individual who has previously been involuntarily committed for mental health treatment. So let me cut to the chase. The Third Circuit in Beers has looked at this issue and held that this is part of the historic exceptions to the Second Amendment as recognized by the Supreme Court. What's wrong with its analysis? Where do I begin? The Beers decision is inconsistent with the other Second Amendment jurisdiction from the other courts, including this circuit. It's internally inconsistent. Well, we've never looked at this specific issue, so it can't be. We don't have an involuntary commitment case yet, do we? You do not. Okay. So it's not contradictory to anything we've done specifically. I think some of the reasoning might be, and I will address that. Let me ask it more directly. The Supreme Court has recognized that there are historic exceptions to the Second Amendment, and one of them is, in the vernacular of the time, insanity. And why isn't it permissible for Congress to use as essentially a practical synonym for that the past involuntary commitment for mental health treatment? Because a past involuntary commitment for mental health treatment is not indicative of current mental illness. So you think the court should be in the business of figuring that out for every single person as to whether they are or are not? In a perfect world, we would have some sort of administrative body doing that, but we don't live in the perfect worlds, and this is a constitutional challenge. Well, it is, but I mean, one of the ways the Third Circuit analyzed this was to say, at the time of the involuntary commitment, this person had no Second Amendment right, and it was nonexistent because of the condition of the person at the time. But I guess I'm troubled by the idea that Congress can't use practical proxies for these historic exceptions. And even if it is not a historic exception, I don't understand why it wouldn't be permissible in terms of just the opportunity for public safety. And I say that because involuntary commitment requires both a finding of mental illness and a finding of dangerousness. Well, I can't say that for certain because every state has its own standards. Well, Washington, I can tell you for sure, has held that in a number of cases, including DW, and cites Supreme Court precedents, starting with O'Connor v. Donaldson, for the proposition that involuntary commitment requires some form of dangerousness. That's certainly not a point that we really need to argue about. Certainly we can take that at its face. But, for example, I think it's incredulous to say that Congress wishes to regulate this field when Congress passed a law in 2007 specifically allowing for individuals with involuntary commitments to have their firearm rights restored. That's the Nix Improvements Amendments Act of 2007. And, by the way, that was passed right after the Virginia Tech massacre. And, in fact, it was passed because of the Virginia Tech massacre. And the Virginia Tech massacre was very clearly an individual who had all sorts of mental health issues. So, in light of a massive shooting, Congress eased restrictions on firearms for individuals who had been involuntarily committed, but it came with strings. The strings were that the elements of whatever state law was being used would only satisfy federal law if the elements under state law met federal law, essentially. And so I don't think it's to your point where you were asking why can't Congress regulate this. Well, this isn't a facial challenge. Congress can certainly regulate the possession of a firearm by an individual who is currently mentally ill. But it's incredulous for the government to argue that Congress has some sort of interest here when Congress has already decided that it is okay with having individuals who have been involuntarily committed possess firearms, but only if it meets that certain criteria. And so that's what we're dealing with here because Mr. Meyer had his firearm rights restored by a Washington state court. And that Washington state court found that his condition is not likely to recur, that he's completed all his treatment, and the other elements there are set out by RCW 941-047. So going back to your point about the Heller, of course that's what we're dealing with here. And the language in Heller regarding the longstanding prohibition regarding the felons and the mentally ill. Again, a couple of points to that. One is it's clearly using the term mentally ill as in the present sense. The Supreme Court didn't say, didn't mention longstanding prohibitions regarding those who have ever been involuntarily committed. That's a different concept. And then also this court. It's a different concept, but it includes, I understand the difference you're drawing between past mental illness and present mental illness, but involuntary commitment requires a conclusion of mental illness. At the time of the commitment, correct. But for example, in this court, as well as in some other circuits, there has been a bit of an erosion or at least a skepticism of the Supreme Court's longstanding prohibition language. For example, in this circuit's case in the United States v. Phillips, that was not a G4 case, of course. That was a G1 case where the appellant challenged G1 as it applies to him because he had a predicate conviction for misprision, I believe if I'm pronouncing that correctly. For what it's worth, that's how I pronounce it, too. It doesn't make it right. Well, you're the presiding judge, so it makes it right in this courtroom. And then essentially the argument there was, well, it's a passive felony. It's nonviolent, so G1 shouldn't apply to me. And the court ruled against him because there was precedent in the United States v. Vance, for example. But it had a very skeptical tone. And specifically, I want to quote from it, the court stated, the constitutional correctness of categorical lifetime bans on firearm possession is maybe a bit sketchy or a bit skeptical of such a scheme. So while the conclusion was against the appellant, I think that there is some support based on the language from this court. And there was further language in that opinion regarding the fact that, well, maybe these prohibitions weren't quite as longstanding. And that language is based on simple studies, law review articles, et cetera, that were issued after Heller, where some of the academics essentially have recognized that the felon prohibition, I think, only existed since maybe the 1930s. I don't believe there was any formal prohibition on the mentally ill possessing firearms back then. So it may have been a bit premature for Justice Scalia to say that. And, of course, it was stated in such passing terms that I would argue is probably dicta. I'm aware that this court has previously found and other circuits have previously found it was not dicta. But essentially, my point here is that I don't think Heller forecloses the argument that we're making, nor does Ninth Circuit precedent foreclose the argument we're making because, as you've pointed out, Your Honor, there is no published G4 opinion in the circuit. There is an unpublished one, which I think was a pro se filer who presumably probably didn't argue the points properly. And so it was a summary disposition of the case. That was the Petromala case. So we'll look at the other circuits. You brought up the Third Circuit. I would point the court to the Sixth Circuit, which is the Tyler decision from 2016. I believe that was a more persuasive decision for a couple of reasons. One is it was in bunk. So we have the benefit of having more learned judges consider the issue than the panel decision from Beers. It was more comprehensive. It was better researched. And the standard that is employed by the Sixth Circuit is identical to the Ninth Circuit when deciding questions of Second Amendment questions. So if we look at the Tyler case, we find that the Tyler case found that it rejected the government's position because essentially agreeing to it would be a rubber stamp of the concept, once mentally ill, always so approach. And so it found a lack of conclusive historical support for such an approach. It recognized that prior involuntary commitments do not indicate a current mental illness. And it also recognized what I mentioned earlier, which is even Congress at this point has determined that a prior involuntary commitment is not necessarily coextensive with current mental illness when it passed the Next Improvements Amendments Act of 2000. Counsel, could I ask you a question? You may. But a prior involuntary commitment did require some determination of dangerousness to himself or to others, correct? I think that would go— That's what O'Connor v. Donaldson said. That is—I don't remember what the order of commitment stated specifically in this manner, but that would probably be the case, yes. Okay, so if that's the case, does that mean that in every G4 case where there's been a prior involuntary commitment that a court would have to hold an evidentiary hearing with expert testimony as to whether a person remains mentally ill and dangerous in any way? Yes, yes. If we prevail, I believe that does open the door to any individual to mount an as-applied challenge. I don't think there's anything wrong with that because this is a constitutional right we're talking about, and there is no other way for some—not everyone is in this boat, because the federal government does recognize state restorations from certain states, just not Washington. So not—and of course Michigan, because that was the Tyler case, and apparently beers. But so there are some states—so it's essentially a matter of geography more than anything else, but so it's not like we're going to have a— Well, it's not merely geography. Aren't there some requirements for having your state included in that list? There is. There are, Your Honor. Some states haven't been included. Gone through the process. Exactly. So in order to rule for you, we would have to determine not only that somehow— well, we would have to determine, among other things, that the congressional procedure for ensuring that the state is following appropriate rules was wrong. In other words, there are, as you said, strings attached or restrictions, and we would have to determine that those are unreasonable, because had Washington State followed the rules, then the answer would already be different. Are you asking if the court would have to impliedly or explicitly find that Congress acted inappropriately by creating a scheme that requires strings attached? Yes. Yes. Because what they've done is to say, well, if you want to fall into this category, we have a process for you to get there, and if that's a permissible thing for them to do, to have a process to get there, it's not an absolute prohibition. I mean, you're almost arguing against yourself. You're saying it's an absolute prohibition, but it really isn't if the state has gone through—has jumped through the hoops. But this is a—well, I'm saying— So G-4 isn't absolute. But this is an applied challenge. It's absolute as to Mr. Meyer. Well, okay. I understand your—but it would, in a sense, even as applied, it would have to just at least implicitly say that this restriction on how you get to this place that Congress has placed on it is insufficient, because otherwise we would never get there. I don't think you have to get there. The Tyler case didn't get there, and the Beers case didn't get there. That doesn't mean that it's not the right place to go, just because they didn't go there. I don't—I think that's so tangential. I don't think you need to get there in order to rule in my client's favor, because the framework already exists for— Well, it basically undoes that piece of legislation. If Congress says, here's how you can get around G-4, here's a way to do that, and we say, well, we can ignore that. States have—it doesn't make any difference. It basically reads that piece of legislation out of existence, doesn't it? No. I think that if you follow the framework for as-applied challenges of any sort, not necessarily just G-4, then we can still come to a favorable outcome for Mr. Mai without implicating the admittedly difficult questions that you have pinpointed. You've used your time, but we've asked a bunch of questions, so you can have a couple of minutes for rebuttal when the time comes. Thank you. Good morning. Abby Wright on behalf of the United States. I wanted to start, Judge Gould, with your question regarding the commitment at issue in this case. The record does reveal that Mr. Mai was committed for making threats to himself— sorry, threats against others and threats to himself, so there was a finding of dangerousness. In this case, we had a hearing before a state court judge. In fact, there were multiple hearings. Mr. Mai was committed, hospitalized, released, that was revoked. I just wanted to clarify that question. Well, I think that's true, but it appears from the uncontested record that since that time, Mr. Mai has made an incredible recovery and has led a commendable life. He's gotten his GED, a bachelor's degree, I believe a master's degree, and is deemed fully employed and has a family and certainly would appear to be a person of high character, at least from the record. I think the record, that's all consistent with the record, Your Honor. I don't think that's the issue before this court. A plaintiff's position, I think, finds no support in this court's precedent. This court has in G-1, in G-9, an unpublished G-4 decision, a G-5 decision, has taken a categorical approach to the firearms bans found in 922G and based that on Heller's statement that longstanding prohibitions are presumptively lawful, that that decision was not casting any doubt on those provisions. Heller then sort of walks through the federal firearms provisions, starting with felons, the mentally ill, talks about prohibitions on sensitive places and commercial transactions. And this court has, as I said, repeatedly recognized that those prohibitions are constitutional. They're permissible. I think a plaintiff acknowledges today that his position would require federal district courts to provide a hearing on sort of mental health of the individual. Counsel, he's looking, the plaintiff is looking for an individualized approach to this, saying that it's unconstitutional to do anything other than that. And your position, as I understand it, at least from your papers, is that this is a pretty easy case, that it's just basically a lawful statute. He falls within the ambit of the statute, and therefore we're bound to approve it. That's correct, Your Honor. That's our position. That's the position that the Third Circuit took in the Beers case. I would note, too, even the Tyler decision, that's a fractured decision, but when you put together the controlling opinion, it didn't just remand for an individualized determination. It also remanded for the government to attempt to prove its case under intermediate scrutiny as well. And, of course, there were six dissenting judges in the Tyler case who we think would have reached the correct decision in that case as well. I'm happy to answer any questions that Your Honor might have. Well, here's one for me. If, in fact, under the statement made in Heller, we should consider this type of restriction to be presumptively valid, then why doesn't the appellant here, why hasn't he rebutted that presumption? Well, I think we look at how presumptively lawful was used in the Heller decision. So in the body of the Heller decision, the Supreme Court said we're not casting doubt on any of these longstanding firearms prohibitions. Then in a footnote, it notes that presumptively lawful measures, that's not an exhaustive list. And I think all the Supreme Court was doing there when it said presumptively lawful was simply saying outside of the Second Amendment context, there could be other issues with those laws. I think the Supreme Court was just being somewhat cautious and not sort of setting forth at that moment that all such prohibitions couldn't have other problems. Judge Fuente's dissenting decision in Binderup also noted that the Supreme Court references sensitive places. And so sensitive places, laws about sensitive places might be a bit more complex to evaluate. I think as far as G1, as this Court recognized in Vanze, and G4, as the Third Circuit recognized in Beers, and this Court did in an unpublished decision as well, those are categorical prohibitions that the Supreme Court didn't cast any doubt on in Heller that this Court and other courts have consistently upheld from Second Amendment challenges. If there are no further questions, we would ask the District Court be affirmed. Thank you. I guess not. Thank you. You can still have your two minutes for rebuttal if you want it. Ultimately, I think, Your Honors, this case is easy. This case is about doing what is easy versus doing what is right, and that was one of the problems I had with the Beers decision. It was essentially towards the end of it, the client said, well, the federal judiciary isn't in a very good position to handle cases like this, so we're just going to wash our hands of this. Just speaking for myself, I don't agree with that rationale, but that wasn't the entire rationale of the decision. Not the entire rationale. Okay. I acknowledge that, but it was one of them, and that is an issue that I'm having with this case in general, and in that, again, in the perfect world, like I said, we'd have an administrative body handling this, but we don't have a perfect world. Ultimately, the Second Amendment is a constitutional right, and so if we have no other option here, then the courts have to protect the individual liberty, and that includes the Second Amendment, and I think we meet all the criteria for an as-applied challenge here, as agreed to by at least the Sixth Circuit and Tyler, and I will also point out that Beers and Tyler are not the only cases on point. I've cited some in my briefs, but the First, Fourth, Sixth, Seventh Circuit Courts of Appeals have all allowed G-1 or G-4 challenges over the Supreme Court's hallowed language, and also the District Court of the Eighth Circuit as well. So this isn't something new. I think this is a trend. I'd like to see that trend extend to the Ninth Circuit. I think it's a well-reasoned trend, and I think the Third Circuit opinion is an aberration. So with that, I will yield my time. Thank you. Thank you very much. We appreciate the arguments of both of you, and the case just argued is submitted, and we will take a break for about 10 or 15 minutes. We'll be back. Thank you. All rise.
judges: Graber, Gould, Ezra